THIS ORDER IS A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

August 26, 2020

Cancellation No. 92025859

*Empresa Cubana Del Tabaco d.b.a Cubatabaco*

*v.*

*General Cigar Co., Inc.*

**Rebecca Stempien Coyle, Interlocutory Attorney:**

This case comes up on Petitioner's February 7, 2020, motion to strike the December 30, 2019, supplemental expert report of Richard Carleton Hacker (the "Supplemental Report") and any trial testimony related thereto or, in the alternative, to reopen discovery.[1] The motion is fully briefed.

## I.  Background

This proceeding commenced more than twenty-three years ago. After nearly fifteen years of various suspensions for civil litigation, Board proceedings were resumed on June 23, 2011.[2] Shortly after pleadings were closed on July 7, 2011, Respondent filed a motion for summary judgment, and proceedings remained suspended pending disposition of that motion, including Petitioner's appeal of the

---

[1] 244 TTABVUE.
[2] 60 TTABVUE.

summary judgment motion to the United States Court of Appeals for the Federal Circuit.[3] Proceedings were again resumed on October 28, 2015, and the Board reset discovery and trial dates.[4] Discovery and trial dates were subsequently reset several times prior to the parties' deadline for expert disclosures.[5] Under the resulting schedule set in accordance with the parties' agreement for operative dates, expert disclosures were due on March 15, 2017, rebuttal expert disclosures were due May 31, 2017, and discovery was set to close on September 15, 2017.[6]

On May 31, 2017, Respondent served the rebuttal expert disclosure of Mr. Hacker (the "Original Report"), and Petitioner deposed Mr. Hacker on June 15, 2017.[7] Proceedings were again suspended on October 23, 2017, pending disposition of Petitioner's motion for leave to use an undisclosed expert report. Petitioner's motion was denied on December 29, 2017, proceedings were resumed and trial dates reset once more with discovery scheduled to close on February 28, 2018, and Petitioner's trial period to end on May 29, 2018.[8] After numerous other suspensions and resetting of dates, Petitioner's trial period ended on September 16, 2019.[9] On October 22, 2019,

---

[3] *See* 64 TTABVUE, 75 TTABVUE, 82 TTABVUE.

[4] 88 TTABVUE.

[5] 91 TTABVUE, 99 TTABVUE, 100 TTABVUE, 103 TTABVUE, 106 TTABVUE, 108 TTABVUE.

[6] 101 TTABVUE, 107 TTABVUE, 108 TTABVUE.

[7] 244 TTABVUE, *see also* 122 TTABVUE 3.

[8] 122 TTABVUE.

[9] 168 TTABVUE. On September 20, 2019, Petitioner timely filed its table summarizing the testimony and materials submitted during its testimony period. 237 TTABVUE, *see also* 207 TTABVUE.

the Board granted Respondent's consented motion for an extension of time to complete the cross-examination of one of Petitioner's trial witnesses.[10]

In accordance with the Board's October 22, 2019, order, Respondent's pretrial disclosures were due by December 30, 2019.[11] On December 30, 2019, Respondent served the Supplemental Report, followed that same day by Respondent's pretrial disclosures.[12]

Petitioner contends that the Supplemental Report consists of new and previously undisclosed opinions, namely, the role of cigar podcasts in consumer confusion (when the Original Report never mentioned cigar podcasts) and the use of cigar publications to confirm the sophistication of premium cigar consumers (despite the lack of citation to, or reliance on, cigar publications as such evidence in the Original Report).[13] Respondent contends the Supplemental Report does not contain new opinions, rather it only contains the following "four new facts": the existence of cigar podcasts as an additional source of information for U.S. cigar consumers, Mr. Hacker's participation in cigar podcasts in 2019, regulatory restrictions on U.S. citizens travelling to Cuba which were imposed after the Original Report, and three articles published after the Original Report "in the cigar press" which support the Original Report's conclusion of no confusion.[14]

---

[10] 241 TTABVUE.
[11] *Id.*
[12] 244 TTABVUE 9, 245 TTABVUE 32, 34.
[13] 244 TTABVUE 3.
[14] 245 TTABVUE 4-5.

Petitioner's motion to strike raises two issues: whether, under the Federal Rules of Civil Procedure, (1) Respondent's attempt to add the Supplemental Report as trial evidence is untimely, and (2) the Supplemental Report constitutes permissible supplementation.

## II.    Applicable Law

The supplementation of expert disclosures in inter partes proceedings before the Board is governed by the Federal Rules of Civil Procedure. 37 C.F.R. § 2.116(a), Trademark Rule 2.116(a); *see also Great Seats Inc. v. Great Seats Ltd.*, 100 USPQ2d 1323, 1326 (TTAB 2011). A written expert report must accompany the disclosure of any expert witness and contain "a complete statement of all opinions the witness will express and the basis and reasons for them …". Fed. R. Civ. P. 26(a)(2)(B)(i); *see also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 401.03 (June 2020). The purpose of this rule "is to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for deposition and cross-examinations at trial." *Gemological Inst. of Am., Inc. v. Gemology Headquarters Int'l, LLC*, 111 USPQ2d 1559, 1561-62 (TTAB 2014) (quoting *Minebea Co. v. Papst*, 231 F.R.D. 3, 5-6 (D.D.C. 2005)); *see also Coles v. Perry*, 217 F.R.D. 1, 4 (D.D.C. 2003) ("By 'locking' the expert witness into … 'a complete statement of all opinions to be expressed and the basis and reasons therefor,' the opposing party knows exactly what she is facing and can decide whether to take the deposition of the expert and how to prepare for cross examination and rebuttal.").

"A party may supplement or correct its Fed. R. Civ. P. 26(a)(2)(B) expert disclosures 'if the party learns that in some **material** respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" *Gemological Inst. of Am.,* 111 USPQ2d at 1562 (quoting Fed. R. Civ. P. 26(e)(1)(A) (emphasis added)). In general, any such supplementation must be done "in a timely manner," however any additions or changes to an expert's report or information given during the expert's deposition, "must be disclosed by the time the party's pretrial disclosures are due." Fed. R. Civ. P. 26(e)(1)(A) and (e)(2); *see also Gemological Inst. of Am.,* 111 USPQ2d at 1562.

The supplementation permissible under Fed. R. Civ. P. 26(e) is narrow in scope and allowed only to "correct[] inaccuracies, or fill[] the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998), *quoted in Gemological Inst. of Am.,* 111 USPQ2d at 1562. If a party is relying on new information to support its supplemental expert disclosure, then the new information relied on must have been "previously unknown or unavailable, [and] render[] information previously provided in an initial report inaccurate or misleading because it was incomplete." *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 572 (S.D.N.Y. 2017) (quotation omitted); *see also Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) ("Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the

disclosure was incorrect or incomplete and, therefore, misleading." (citing *Keener*, 181 F.R.D. 639)).

A "party may not utilize Rule 26(e)(1)(A) 'to sandbag one's opponent' or to 'deepen' or 'strengthen' the party's case where the information should have been included in the expert report." *Gemological Inst. of Am.*, 111 USPQ2d at 1562 (quoting *Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003)). Construing the duty to supplement to allow parties to bolster an expert's prior opinions "would wreak havoc on docket control and amount to unlimited expert preparation." *Akeva*, 212 F.R.D. at 310, *see also Beller*, 221 F.R.D. at 701.

"A supplemental report which seeks to clarify an expert's earlier opinions or provides new examples and illustrations to bolster them is not proper supplementation." *Gemological Inst. of Am.*, 111 USPQ2d at 1562 (citing *Akeva*, 212 F.R.D. at 310). Supplementation under Rule 26(e) "does not cover failure of omission because the expert did an inadequate or incomplete preparation." *Akeva*, 212 F.R.D. at 310 (citations omitted); *see also SD3, LLC v. Rea*, 71 F. Supp. 3d 189, 195 (D.D.C. 2014) (Expert's declaration was impermissible "bolstering" under Rule 26(e) because the expert "did not merely correct inaccuracies in his deposition testimony [but] found additional evidence that further substantiated his previously stated expert opinions."); *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011) ("[E]xperts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issue they already opined upon, or to continually supplement their opinions.").

As to timing, Fed. R. Civ. P. 26(e)(2) provides that "[a]ny additions or changes to [an expert's report] must be disclosed **by the time** the party's pretrial disclosures" are due. (Emphasis added). *See Coene v. 3M Co.*, 303 F.R.D. 32, 42 (W.D.N.Y. 2014) ("Supplemental reports must be provided at the same time that a party's pretrial disclosures are due." (citing Fed. R. Civ. P. 26(e)(2)); *see also Rivera-Marrero v. Presbyterian Cmty. Hosp.*, 255 F. Supp. 3d 290, 296 (D.P.R. 2017) ("The disclosing party had a duty to supplement the written report by November 14, 2016, which was effectively 'at least 30 days before trial'" or the time for the party's pretrial disclosures under Fed. R. Civ. P. 26(a)(3)); *Marathon Petroleum Co. LP v. Midwest Marine, Inc.*, 906 F. Supp. 2d 673, 693 (E.D. Mich. 2012).

## III. Decision

### A. Whether the Supplemental Report is a Proper Supplementation

Respondent served the Supplemental Report the same day as its deadline for, but before serving, its pretrial disclosures.[15] Accordingly, the Supplemental Report was timely under Fed. R. Civ. P. 26(e)(2).

Petitioner contends that supplemental expert reports must be served the day before that party's pretrial disclosures are due, relying on a footnote in *Entravision Commc'n Corp. v. Liberman Television LLC*, 113 USPQ2d 1526, 1528 n.5 (TTAB 2015). However, the footnote in *Entravision* addressed the relevant timeline of that proceeding, namely a motion filed before the party's pretrial disclosures to substitute an expert. *Entravision* did not address the same question of timeliness under Fed. R.

---

[15] 244 TTABVUE 9, 245 TTABVUE 32, 34.

Civ. P. 26(e)(2) as is presented in this proceeding. Respondent's disclosure of the Supplemental Report on the day its pretrial disclosures were due is not untimely.

The Board next turns to whether the report is a permissible supplementation. As stated above, the Supplemental Report is permissible if the Original Report was materially incomplete or incorrect, and the supplement adds or corrects information previously unavailable, or unknown, to Mr. Hacker that renders information in the Original Report inaccurate or misleading. While "[t]he Board does not read testimony and consider substantive objections to evidence, or determine the probative value of evidence, prior to final hearing," *Weyerhauser Co. v. Katz*, 24 USPQ2d 1230, 1233 (TTAB 1992), the arguments presented here are sufficient upon which to make a determination. By Respondent's own admission, the Supplemental Report contains "facts occurring or discovered by the expert after the date of the Original Report that support the expert's original opinions".[16] Respondent states that in the Original Report, Mr. Hacker opined that Petitioner's expert reports "no longer 'describe the American cigar scene today'" as shown by "examples of sources of information available to cigar smokers not existing in 2002".[17] However, as Respondent concedes, "cigar podcasts" existed at the time the Original Report was prepared.[18] Respondent fails to explain how Mr. Hacker's preparation of his Original Report failed to include the existence of cigar podcasts, which suggests an inadequate or incomplete preparation of the original report as it pertains to podcasts.

---

[16] 245 TTABVUE 3.
[17] *Id*. at 14.
[18] *Id*. at 15.

Moreover, for purposes of supplementation under Fed. R. Civ. P. 26(e)(2) any new information must cause the original disclosure to be either inaccurate or misleading because it was incomplete. Respondent asserts that the Supplemental Report is permissible because a determination of likelihood of confusion is based on the facts as of the time of trial, and due to the thirty-two month gap between the Original Report and Respondent's trial period, the Original Report is now incomplete.

Respondent's broad construction of "incomplete" is not well-taken. While likelihood of confusion is determined based on the factual situation at the time of trial, and the length of time between the Original Report and Respondent's trial period has been considerable, this alone does not permit a deviation from the narrow scope of permissible supplementation under Fed. R. Civ. P. 26(e). While the Board may allow, in appropriate situations, parties to supplement the factual record during trial, Respondent does not demonstrate that the Supplemental Report corrects, clarifies, or fills in a gap in the Original Report that rendered the original disclosure inaccurate or misleading. Respondent's contention that the new information is necessary for the Board to evaluate Mr. Hacker's opinion, and to "to show that [his] expert opinion … remains valid in light of current facts" is not a basis for supplementation under the Rule.[19] Respondent does not explain why the validity of the Original Report would be in question under current facts, nor how the new information in the Supplemental Report is necessary to make the Original Report complete or accurate. Respondent concedes that the Supplemental Report merely

---

[19] *Id*. at 11.

9

seeks to "support the expert's original opinions" with new examples and illustrations.[20] This is bolstering, not a proper supplementation under Fed. R. Civ. P. 26(e).

## B. Whether the Supplemental Report Should Be Excluded

An "improper Rule 26(e) supplementation results in an untimely disclosure of an expert opinion, triggering Fed. R. Civ. P. 37(c)(1) sanctions, including" its preclusion, unless the untimely disclosure was substantially justified or harmless. *Gemological Inst. of Am.*, 111 USPQ2d at 1562. *See also* Fed. R. Civ. P. 37(c)(1); *Keener*, 181 F.R.D. at 641; *SD3, LLC*, 71 F. Supp. 3d at 194-195; *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1171 (D. Colo. 2006). Accordingly, having determined that the Supplemental Report is not a proper supplementation, the Board applies "the following five-factor test to determine whether the untimely disclosure is substantially justified or harmless: '1) the surprise to the party against whom the evidence would be offered; 2) the ability of that party to cure the surprise; 3) the extent to which allowing the testimony would disrupt the trial; 4) importance of the evidence; and 5) the nondisclosing party's [or the late disclosing party's] explanation for its failure to disclose the evidence.'" *Gemological Inst. of Am.*, 111 USPQ2d at 1562 (quoting *Great Seats*, 100 USPQ2d 1323, 1327 (TTAB 2011) (internal citation omitted)); *see also ProMark*, 114 USPQ2d at 1240.

Petitioner contends the Supplemental Report is highly prejudicial because it asserts previously undisclosed facts and opinions regarding information that was not

---

[20] *Id*. at 3.

within the scope of the Original Report. Petitioner also asserts discovery closed more than a year ago and any effort to cure the surprise would require a reopening of discovery on the new facts and opinions, thus resulting in a significant delay and disruption to trial. Petitioner further contends that Respondent has no reasonable explanation for why it did not disclose the facts that existed in 2018 (the existence of podcasts) or that Mr. Hacker would rely on cigar publications in support of his opinion, by the close of discovery or the start of trial.

In response, Respondent contends that the facts in the Supplemental Report are important to the Board's determination of Petitioner's Trademark Act Section 2(d) claim because the supplemental facts cited therein show that Mr. Hacker's opinion in the Original Report is supported by current facts and remains valid. Respondent further contends that the Supplemental Report does not create an unfair surprise because it only sets forth four additional "groups of facts," and Petitioner can prepare to cross-examine Mr. Hacker on those facts without the need for material additional research or expense. Respondent maintains that the majority of the facts in the Supplemental Report did not exist at the time of the Original Report. Specifically, the change in United States policy toward Cuba was not public record until June 2019, the three articles were published in 2018, July 2019, and sometime in 2019, and Mr. Hacker's appearance on several podcasts began in July 2019.[21] While cigar podcasts existed at the time of the Original Report, Mr. Hacker attested that he did not learn about them until July 2019.[22]

---

[21] 245 TTABVUE 18, 245 TTABVUE 25, ¶¶ 9, 12.
[22] 245 TTABVUE 25, ¶ 9.

In its reply, Petitioner contends that "even if likelihood of confusion is assessed at the time of trial, the trial started on October 8, 2018, when Petitioner's testimonial period opened" and "Respondent could have produced the [supplemental report] at that time".[23] Petitioner also maintains that it made litigation decisions based on Hacker's 2017 report and deposition, and it prepared and presented its case-in-chief on the basis of the discovery taken in this proceeding, including in relation to Mr. Hacker.

With respect to the first *Great Seats* factor, the parties do not agree on the scope of the newly disclosed information in the Supplemental Report. However, this factor weighs in favor of Petitioner even under Respondent's arguments that the Supplemental Report only includes new facts. Petitioner's testimony period has passed, and Petitioner presented its case-in-chief based on the discovery, including in relation to Mr. Hacker, conducted in this proceeding. Nor does either party suggest that Respondent indicated to Petitioner its intent to supplement the Original Report.

Addressing factors two and three, Petitioner's ability to cure the surprise of the Supplemental Report is significantly diminished because the discovery period closed nearly two years ago. *See Spier Wines Ltd. v. Shepher*, 105 USPQ2d 1239, 1245 (TTAB 2012). Reopening discovery at this late stage in this twenty-three year old proceeding would cause further disruption and delay. Furthermore, allowing Mr. Hacker to testify as to the additional facts without reopening discovery would require Petitioner to continue with trial and conduct cross-examination of Mr. Hacker from a

---

[23] 247 TTABVUE 7.

disadvantageous standpoint, despite Petitioner's prior deposition of Mr. Hacker regarding the Original Report. Accordingly, these factors also weigh in favor of Petitioner.

Regarding the fourth factor, "[i]n determining the importance of the evidence or testimony to the fair adjudication of the proceedings, the Board will consider various factors, including whether the testimony is cumulative or if evidence can be introduced by other means, and whether the proposed testimony would be admissible." *Spier Wines*, 105 USPQ2d at 1244. As noted above, Respondent states the Supplemental Report supports the Original Report and conclusions. Subsequently, the Supplemental Report is cumulative of what is in the Original Report. In view of its cumulative nature, the Board finds that the marginal importance of the Supplemental Report weighs in favor of Petitioner.

Finally, as to the fifth factor, Respondent seeks to excuse its failure to disclose the evidence in question by contending many of the additional facts did not exist until 2019, or its expert was not aware of the information until July 2019. Respondent also asserts that it is necessary for Mr. Hacker to testify as to the additional facts so the Board can determine whether his opinion is based on the factual circumstances existing at the time of trial. As both parties have noted, this case is quite old. Proceedings were suspended, or dates extended, numerous times since the service of the Original Report.[24] Yet, Respondent waited until December 2019, months after the close of Petitioner's testimony period and just prior to its own pretrial disclosures, to

---

[24] 121 TTABVUE, 125 TTABVUE, 143 TTABVUE, 148 TTABVUE, 156 TTABVUE, 168 TTABVUE, 241 TTABVUE.

ask Mr. Hacker if there were any factual developments that may have affected the opinions expressed in the Original Report.[25] It is true that parties cannot predict if or when truly new facts or information will arise. Nonetheless, if Respondent was concerned with presenting current factual information to the Board for its likelihood of confusion analysis, then Respondent should have inquired into the need to "supplement" the Original Report earlier in this proceeding or informed Petitioner that Respondent was going to update the Original Report to reflect new information that arose after May 2017.

On balance, after considering the *Great Seats* factors as they are applicable to this proceeding, Respondent's failure to timely disclose the Supplemental Report was not substantially justified or harmless.

In view of the foregoing, the motion to strike Respondent's supplemental expert report is **granted**. The Supplemental Report is hereby stricken.

## IV. Schedule

Proceedings are **resumed**. Dates are reset as follows:

| | |
|---|---|
| Defendant's 30-day Trial Period Ends | 9/15/2020 |
| Plaintiff's Rebuttal Disclosures Due | 9/30/2020 |
| Plaintiff's 15-day Rebuttal Period Ends | 10/30/2020 |
| Plaintiff's Opening Brief Due | 12/29/2020 |
| Defendant's Brief Due | 1/28/2021 |
| Plaintiff's Reply Brief Due | 2/12/2021 |
| Request for Oral Hearing (optional) Due | 2/22/2021 |

---

[25] 245 TTABVUE 24, ¶ 7.

The Federal Rules of Evidence generally apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125. These include pretrial disclosures, the manner and timing of taking testimony, matters in evidence, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be submitted in accordance with Trademark Rules 2.128(a) and (b). Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a).